Case 2:16-cv-00399 Document 85 Filed in TXSD on 04/03/17 Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
April 03, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| X-DRILL HOLDINGS INC., *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-399 |
| | § | |
| JACK-UP DRILLING RIG SE 83, *et al*, | § | |
| | § | |
| Defendants. | § | |

### ORDER GRANTING MOTIONS TO INTERVENE

On this day came to be considered Max Shipping, Inc.'s ("Max Shipping") Opposed Motion to Intervene (D.E. 79) and Signet Maritime Corporation's ("Signet") Opposed Motion to Intervene (D.E. 80). For the reasons stated below, the Motions are **GRANTED**.

**I.     JURISDICTION**

This action is within the admiralty jurisdiction of this Court and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has jurisdiction pursuant to 28 U.S.C. § 1333. Venue is proper in this Court because the vessel was present in the district and is presently in the district as represented by the proceeds from the sale. 28 U.S.C. § 1391(b); *In re McDonnell-Douglas Corp.*, 647 F.2d 515, 516 (5th Cir. 1981).

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

X-Drill Holdings Inc. ("X-Drill") brought this action on September 20, 2016 against Defendants Jack-Up Drilling Rig SE 83 ("SE 83") and her engines, tackle etc. *in rem*; Supreme Excellence 1 (HK) Ltd.; Supreme Excellence 2 (HK) Ltd.; Supreme Excellence 3 (HK) Ltd.; and Supreme Excellence 4 (HK) Ltd., (collectively "Supreme") *in personam*. X-Drill sought to obtain security pending a judgment of the Court and/or an award in foreign arbitration relating to

its maritime lien for necessaries under the United States Commercial Instruments and Maritime Lien Act ("CIMLA"). (D.E. 21, Pages 1-2). X-Drill alleged Supreme failed to pay for contracted services including offshore maintenance operations, crewing services, materials, parts, repairs, and other services required by SE 83 while in Corpus Christi, Texas. (D.E. 21, Page 2). X-Drill requested the arrest of Supreme's property within this jurisdiction under Rules B and C of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. (D.E. 21, Page 3). On September 21, 2016, United States Magistrate Judge Jason Libby issued a writ of attachment to X-Drill against SE 83 and a warrant to attach SE 83. (D.E. 6 and D.E. 9). On November 18, 2016, United Overseas Bank Limited ("United Overseas") filed a Notice of Claim, Lien, and Statement of Interest. (D.E. 13). On December 5, 2016, United Overseas filed an intervening verified complaint claiming it had issued a first preferred maritime mortgage to Supreme in the amount of $45,018,750.00 which is in default. (D.E. 31, Page 3). United Overseas also claims a breach of the mortgage contract based on Supreme's failure to pay. (D.E. 31, Page 5).

On December 15, 2016, SE 83 was sold at judicial sale for one million dollars ($1,000,000.00) to Dixstone Holdings, Ltd. of the Bahamas. (D.E. 58). On December 30, 2016, this sale was confirmed and ownership of SE 83 was transferred as is with no warranties, and free and clear of all liens, claims, and encumbrances. (D.E. 58). On February 9, 2017, the agreed upon payments owed for certain custodial fees were paid out of the registry of the court. (D.E. 73). At issue is the disbursement of the remaining proceeds. On March 24, 2017, Max Shipping filed the pending Opposed Motion to Intervene. (D.E. 79). On March 28, 2017, Signet filed its Opposed Motion to Intervene. (D.E. 80).

### III. DISCUSSION

An intervention based on a maritime lien against the *res* is an intervention of right governed by Federal Rule of Civil Procedure 24(a). *See DnB Holdings, Ltd. v. M/V Hermitage*, 1995 WL 529853, at *1 (E.D. La. Sept. 7, 1995) (citing *Banco de Credito Indus. v. Tesoreria Gen.*, 990 F.2d 827 (5th Cir. 1993)). Rule 24(a) provides that on timely motion, the Court must permit anyone to intervene who:

> (1) is given an unconditional right to intervene by federal statute; or
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(1)-(2). Based upon this rule, the Fifth Circuit has developed a four factor test for evaluating a motion to intervene under Rule 24(a)(2):

> (1) the applicant must file a timely application;
> (2) the applicant must claim an interest in the subject matter of the action;
> (3) the applicant must show that disposition of the action may impair or impede the applicant's ability to protect that interest; and
> (4) the applicant's interest must not be adequately represented by existing parties to the litigation.

*Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 422 (5th Cir. 2002). The Fifth Circuit has explained "the inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application . . . [and] intervention of right must be measured by a practical rather than a technical yardstick." *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 413 (5th Cir. 1991). However, failure to meet any of the four requirements results in denial of the motion. *See Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). Generally, "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Heaton*, 297 F.3d at 422.

A. Max Shipping's Motion to Intervene (D.E. 79)

According to its motion, Max Shipping, as part of an agreement with X-Drill, provided necessaries to Jack-Up Rigs SE 83 (the rig recently sold), SE 89, SE 93, and SE 98 and has not received payment for these necessaries. Therefore, Max Shipping argues it should be allowed to intervene as a matter of right under Rule 24(a)(2). First, Max shipping argues its motion is timely because X-Drill had represented to Max Shipping that its claims would be satisfied after the sale of SE 83. (D.E. 79, Page 3). However, Max Shipping states recent conversations made it clear X-Drill now does not intend to pay Max Shipping for the full amount owed. (D.E. 79, Page 3). Second, Max Shipping argues it has an interest in the subject matter of this action because it has a valid maritime lien against SE 83 which attaches to the proceeds of the sale. (D.E. 79, Page 2). Third, Max Shipping argues its interest will be substantially impaired. (D.E. 79, Pages 2-3). Finally, Max Shipping argues the existing parties do not adequately represent its interest because of the breach of contract and the multiple maritime liens it holds against the rigs. (D.E. 79, Pages 2-3).

1. Timeliness

The Fifth Circuit has identified four factors to consider when determining whether a motion to intervene is timely: (1) "[t]he length of time during which the would-be intervenor actually [knew] or reasonably should have known of his interest in the case before he petitioned for leave to intervene," (2) "[t]he extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case," (3) "[t]he extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied," and (4) "[t]he existence of unusual circumstances militating either for or against a

determination that the application is timely." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977). The Fifth Circuit has explained the timeliness requirement "is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Espy*, 18 F.3d at 1205. "A motion to intervene's timeliness is to be determined from all the circumstances." *Doe v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001).

The Court finds Max Shipping's Motion to Intervene is timely based on the factors outlined in *Stallworth*. 558 F.2d at 264-66. This action was filed on September 20, 2016 and the disbursement of the funds from the sale of SE 83 is still being disputed. In its Motion, Max Shipping indicated X-Drill represented to it that its claims would be satisfied after the sale of SE 83. (D.E. 79, Page 3). However, Max Shipping indicates recent communications make it clear X-Drill no longer intends to pay the full amount under the agreement. (D.E. 79, Page 3). While Max Shipping should have known of its interest in the case from the beginning of the litigation, the Fifth Circuit has held "the speed with which the would-be intervenor acted when it became aware that its interests would no longer be protected by the original parties" should be used to determine whether it acted promptly. *Espy*, 18 F.3d at 1206 (citing *Stallworth*, 558 F.2d at 264). Additionally, no prejudice would come to the existing parties because the disbursement of the funds is still being disputed. Further, Max Shipping would suffer prejudice if the motion is denied because its interest in SE 83 would not be represented. Finally, there are no unusual circumstances present that weigh for or against a determination of timeliness.

    **2.**    **Interest**

The second factor under Rule 24(a)(2) requires that the movant "claim an interest in the subject matter of the action." *Heaton*, 297 F.3d at 422. The movant must show it has "a direct,

substantial, legally protectable interest in the action, meaning that the interest be one which the substantive law recognizes as belonging to or being owned by the applicant." *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 250 (5th Cir. 2009) (internal citations and quotation marks omitted). "[I]t is plain that something more than an economic interest is necessary." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984). The Fifth Circuit has observed that "the interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Espy*, 18 F.3d at 1207 (citation and internal quotation marks omitted).

As stated above, Max Shipping provided necessaries, including offshore maintenance, crewing services, materials, parts and other services, to rigs for X-Drill including SE 83. (D.E. 79, Page 1). Max Shipping asserts it has a valid maritime lien against SE 83 for the services provided, which X-Drill refuses to pay. (D.E. 79, Page 2). Under CIMLA, any person furnishing repairs, supplies, towage, usage of drydock or marine railway, or other necessaries, to any foreign or domestic vessel has a maritime lien on that vessel. 46 U.S.C. §§ 31301, 31342. A person providing necessaries to a vessel on the order of the owner or a person authorized by the owner: "(1) has a maritime lien on the vessel; (2) may bring a civil action in rem to enforce the lien; and (3) is not required to allege or prove in the action that credit was given to the vessel." 46 U.S.C § 31342(a). Accordingly, it appears Max Shipping has a valid maritime lien against SE 83. Therefore, Max Shipping has a legally protectable interest in SE 83 and the proceeds of its sale.

### 3. Impairment

The third factor for intervention under Rule 24(a)(2) requires the movant "show that disposition of the action may impair or impede the applicant's ability to protect [its] interest" in

the subject matter of the litigation. *Heaton*, 297 F.3d at 422. Rule 24(a)(2) does not require "a showing by the applicant for intervention that he will be bound by the disposition of the action." *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996). However, "the *stare decisis* effect of an adverse judgment constitutes a sufficient impairment to compel intervention." *Sierra Club v. Glickman*, 82 F.3d 106, 109-10 (5th Cir. 1996) (per curiam) (citing *Espy*, 18 F.3d at 1207).

Considering its maritime lien against SE 83 for services provided, any disposition of the proceeds from the sale of SE 83 would prohibit Max Shipping from making a claim against the vessel and from recouping any of the sale proceeds currently held in the registry of the court. *See Point Landing, Inc. v. Ala. Dry Dock & Shipbuilding Co.*, 261 F.2d 861, 866 (5th Cir. 1958) (unless pleadings showed as matter of law that intervenor did not have maritime lien, denial of petition to intervene deprives intervenor of right to come in and prove existence, validity, and priority of its lien); *Am. V Ships Ltd., LLC v. Norica Eng'g Servs.*, 34 F. App'x 151, 2002 WL 496377, at *3 (5th Cir. March 19, 2002) (per curiam) ("Unless Appellant is permitted to intervene in the present action it will be forever prohibited from making a claim against the vessel and from recouping any of the sale proceeds currently held in the registry of the court."). Accordingly, the third factor is satisfied.

### 4. Adequate Representation

Finally, under Rule 24(a)(2), the movant's "interest must not be adequately represented by existing parties to the litigation." *Heaton*, 297 F.3d at 422. "The applicant has the burden of demonstrating inadequate representation, but this burden is 'minimal.'" *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014) (quoting *Espy*, 18 F.3d at 1207). The applicant "need not show that the representation by existing parties will be, for certain, inadequate." *Id*. Rather, the

burden "is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Haspel & Davis Milling & Planting Co. Ltd. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007) (citation omitted). However, the burden "cannot be treated as so minimal as to write the requirement completely out of the rule." *Id*.

The Fifth Circuit recognizes two presumptions of adequate representation. *Edwards*, 78 F.3d at 1005. The first arises when one party is a representative of the absentee by law. *Id*. The second "arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit," in which event "the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id*.

Here, none of the presumptions of adequate representation apply. As stated above, Max Shipping indicated recent conversations have made it clear that X-Drill does not intend to pay for the amount owed from the sale of SE 83 as originally represented. (D.E. 79, Page 3). United Overseas has a competing interest in the proceeds from the sale of SE 83. Accordingly, the Court finds Max Shipping's interest cannot be adequately represented by the existing parties to the litigation. Therefore, Max Shipping's Motion to Intervene (D.E. 79) is **GRANTED**.

  **B.**  **Signet's Motion to Intervene (D.E. 80)**

Signet is a marine services company who provided tug services to SE 83 on June 24, 2016 at Gulf Marine Fabricators in Aransas Pass, Texas. (D.E. 80-1, Page 2). Signet presented an agent of SE 83 with an invoice for $26,550.00 which Signet asserts has not been paid. (D.E. 80-1, Pages 2-3). Signet argues this is a material breach of the agreement, giving it a maritime lien against SE 83. (D.E. 80-1, Pages 2-3).

Accordingly, Signet argues it should be allowed to intervene as a matter of right under Rule 24(a)(2). First, Signet argues it has an interest in the subject of the action because it has a

maritime lien against SE 83 and its sale proceeds arising from the failure to pay for tug services described above. (D.E. 80, Page 2). Second, Signet argues disbursing the sale proceeds would impair or impede its ability to protect its interest because it would extinguish its lien. (D.E. 80, Page 2). Thirdly, Signet argues the existing parties cannot adequately represent its interests because they have competing interests in the sale proceeds. (D.E. 80, Page 2). Finally, Signet argues its motion is timely because it was advised previously that payment would be forthcoming upon the sale of SE 83. (D.E. 80, Page 3). Signet further states X-Drill may have asserted Signet's lien in its amended complaint but it is seeking to intervene to be certain its interests are addressed. (D.E. 80, Page 3).

### 1. Timeliness

The Court finds Signet's Motion to Intervene is timely based on the factors outlined in *Stallworth*. 558 F.2d at 264-66. This action was filed on September 20, 2016 but the disbursement of the funds from the sale of SE 83 is still being disputed. Signet should have been aware of its interest in the case from the outset of the litigation based on its agreement. However, Signet was advised it would be paid upon the sale of SE 83. (D.E.80, Page 3). Additionally, Signet indicated it was uncertain if its lien claim was included in X-Drill's amended complaint. (D.E. 80, Page 3). Signet filed its motion to intervene promptly after it became aware its interests were not being protected by the original parties. *See Espy*, 18 F.3d at 1206 (citing *Stallworth*, 558 F.2d at 264). The existing parties to the litigation would experience no prejudice because the disbursement of the proceeds from the sale of SE 83 is still being disputed. Conversely, Signet would be prejudiced if its motion is denied because distributing the proceeds without addressing Signet's claim would extinguish its maritime lien. (D.E. 80, Page

2).  Finally, there are no unusual circumstances that weigh for or against a determination of timeliness.

### 2. Interest

As stated above, any person furnishing repairs, supplies, towage, use of drydock or marine railway, or other necessaries, to any foreign or domestic vessel has a maritime lien on that vessel.  46 U.S.C. §§ 31301, 31342.  Signet provided tug services to SE 83 while it was at Gulf Marine Fabricators in Aransas Pass, Texas.  (D.E. 80-1, Page 2).  Signet received no payment for the balance of $26,550.00 for services rendered.  (D.E. 80-1, Page 3).  Due to this failure to pay, Signet has a maritime lien against SE 83, as reduced to its sale proceeds, for the amount owed for its tug services.  (D.E. 80-1, Page 3).  Therefore, the Court finds Signet has a legally protectable interest in the subject matter of the action.

### 3. Impairment

As described previously, if the proceeds from the sale of SE 83 are distributed without considering Signet's claim, Signet's maritime lien will be extinguished.  *See Am. V Ships*, 2002 WL 496377; *Point Landing*, 261 F.2d 861.  Therefore, the Court finds the disposition of the action would impair or impede Signet's ability to protect its interest.

### 4. Adequate Representation

Signet asserts the existing parties cannot adequately protect its interest because X-Drill and United Overseas have competing interests.  (D.E. 80, Page 2).  Signet alleges it was advised that payment would be made upon the sale of SE 83; however, no payment was ever made. Additionally, Signet asserts it is unclear whether X-Drill asserted Signet's lien claim in its amended complaint. Accordingly, the Court finds Signet's interests cannot be adequately

represented by the existing parties. Therefore, Signet's Motion to Intervene (D.E. 80) is **GRANTED**.

IV. **CONCLUSION**

For the reasons stated above, Max Shipping's Motion to Intervene (D.E. 79) and Signet's Motion to Intervene (D.E. 80) are **GRANTED**.

SIGNED and ORDERED this 3rd day of April, 2017.

_____
Janis Graham Jack
Senior United States District Judge